IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WILLIAM H. GILLIAM, | Civ. No. 20-00372 JMS-KJM |
| Plaintiff, | ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND/OR FOR JUDGMENT ON THE PLEADINGS, ECF NO. 17 |
| vs. | |
| PORTER MCGUIRE KIAKONA & CHOW, LLP, | |
| Defendant. | |

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND/OR FOR JUDGMENT ON THE PLEADINGS, ECF NO. 17

### I.  INTRODUCTION

The court considers Defendant Porter McGuire Kiakona & Chow, LLP's ("Defendant" or "PMKC") Motion to Dismiss and/or for Judgment on the Pleadings ("Motion"), ECF No. 17, directed at pro se Plaintiff William H. Gilliam's ("Plaintiff" or "Gilliam") Amended Complaint, which alleges various state law claims, as well as violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*  The Motion challenges only the FDCPA claims, and otherwise asks the court under 28 U.S.C. § 1367(c) to decline to exercise supplemental jurisdiction over the state law claims.

PMKC is a law firm that represented the Association of Apartment Owners of Kuhio Shores at Poipu ("AOAO"), a condominium association on Kauai, regarding unpaid association dues and costs now exceeding $245,000 on a condominium property ("the Property"). Over the past few years, Plaintiff has attempted to challenge collection efforts and foreclosure proceedings on the Property in several other pro se actions in Hawaii State Court, this federal District Court, the U.S. Bankruptcy Court for the District of Hawaii, and the Ninth Circuit Bankruptcy Appellate Panel ("BAP").[1] Moreover, related actions are still pending in the Hawaii Intermediate Court of Appeals and in the Ninth Circuit Court of Appeals.[2] The present action against PMKC is but a limited aspect of this continuing legal saga.

---

[1] *See AOAO of Kuhio Shores v. Pacific Rim Prop. et al.*, Civ. No. 5CC161000063 (Haw. 5th Cir. Ct. 2016); *In re Gilliam*, No. 19-01366 (Bankr. D. Haw. 2019); *In re Pac. Rim Prop. Serv. Corp.*, No. 19-01051 (Bankr. D. Haw. 2019); *In re Pac. Rim Prop. Serv. Corp.*, BAP No. HI-20-1071-BTL (B.A.P. 9th Cir. 2020); *In Re Gilliam*, Civ. No. 20-00194 JMS-WRP (D. Haw. 2020); and *Gilliam v. Watanabe, et al.*, Civ. No. 20-00201 JMS-RT (D. Haw. 2020).

Where necessary, the court takes judicial notice of these court proceedings. *See, e.g.*, *Trigueros v. Adams*, 658 F.3d 983, 987 (9th Cir. 2011) (reiterating that a court "may take [judicial] notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue") (citation omitted); *see also Kohja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (allowing a court to take judicial notice of documents that "necessarily form the basis of the complaint," and to consider them at a motion-to-dismiss stage).

[2] *See AOAO of Kuhio Shores at Poipu v. Pac. Rim Prop. Serv. Corp.*, CAAP 19-0000778 (Haw. Ct. App. 2019); *Gilliam v. Watanabe*, No. 20-16939 (9th Cir. 2020); *In re Gilliam*, No. 20-17165 (9th Cir. 2020). The court also takes judicial notice of these proceedings where necessary.

Plaintiff's Amended Complaint claims that PMKC violated the FDCPA while representing the AOAO in a Hawaii State Court foreclosure action. PMKC's Motion argues that the Amended Complaint fails because Plaintiff lacks standing or otherwise fails to state a viable FDCPA claim—arguments that center on whether Plaintiff himself is an owner of the Property and was the object of any consumer debt collection activity. But the Bankruptcy Court (twice) and this court have already determined that Plaintiff has no ownership interest in the Property or in the entity that holds title to it. As explained to follow, the court gives preclusive effect to those prior factual determinations, and thus GRANTS Defendant's Motion.

## II.  <u>BACKGROUND</u>

The court assumes the well-pleaded factual (but not legal) allegations of the Amended Complaint are true for purposes of analyzing the Motion. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And, where necessary to understand the context, the court draws upon judicially-noticed prior orders in the related cases noted above—most notably, an "Order Affirming Orders of Bankruptcy Court" from *In Re Gilliam*, Civ. No. 20-00194 JMS-WRP (D. Haw. Oct. 1, 2020) (available at 2020 WL 5848340 (D. Haw. Oct. 1, 2020)).

## A.    Factual Background

Because the Motion focuses on whether Plaintiff has "standing" to assert an FDCPA claim—essentially, whether he was "the object of collection activity arising from a consumer debt," *Pratap v. Wells Fargo Bank, N.A.*, 63 F. Supp. 3d 1101, 1113 (N.D. Cal. 2014) (citation omitted)—and not on whether Defendant's alleged activities fit within the FDCPA's prohibitions, this background section focuses on the facts relevant to determining whether Plaintiff has an ownership interest in the Property so as to be the object of consumer debt collection activity by PMKC.

### 1.    *The Amended Complaint*

On April 28, 2016, with PMKC as counsel, the AOAO filed a Complaint for Foreclosure against Pacific Rim Property Service Corporation ("PRPSC")—a dissolved corporation that holds title to the Property—in the Circuit Court of the Fifth Circuit, State of Hawaii ("State Court"), seeking to enforce a lien on the Property for unpaid association assessments and fees ("the State Court foreclosure action").[3]  *See* ECF No. 10 at PageID ## 30-32; *see also In re Gilliam*,

---

[3] In the State Court foreclosure action, the State Court issued orders on October 2, 2019 authorizing and instructing a court-appointed receiver, George Robinson, to sell the Property and settle the debts of PRPSC.  *See In re Gilliam*, 2020 WL 5848340, at *1-2.  After having been denied an opportunity to intervene, Gilliam filed an interlocutory appeal, and on May 29, 2020, the Hawaii Intermediate Court of Appeals ("ICA") issued an order staying the October 2, 2019 orders.  *See id.* at *2 & n.3.  That appeal remains pending in the ICA.

2020 WL 5848340, at *5 (D. Haw. Oct. 1, 2020) ("A title report plainly indicates that PRPSC (not Gilliam) is the 'fee owner' of the [Property].").  Based upon alleged actions taken by PMKC in the State Court foreclosure action, Plaintiff brought the instant action against PMKC, alleging jurisdiction under 28 U.S.C. § 1331.  ECF No. 1.  His Amended Complaint alleges the following claims: (1) wrongful taking of property; (2) fraud; (3) slander of title; (4) unfair and deceptive trade practices; (5) tortious interference with business relationships; (6) intentional infliction of emotional distress; (7) abuse of process; and (8) harassment and misstatements in violation of 15 U.S.C. §§ 1692d and 1692e.[4] *See* ECF No. 10 at PageID ## 4-14.

As he has asserted in related proceedings, Gilliam alleges in this action that he owns an interest in the Property or PRPSC itself.  ECF No. 10 at PageID # 30.  The precise source of Gilliam's alleged ownership interest is unclear from his pleadings but apparently stems from his late mother's estate and her ownership of PRPSC, "of which she [was] sole officer and director at her death in 2009, which holds legal title to [the Property]."  *Id.*  According to the Amended Complaint, PRPSC is "an administratively dissolved corporation."  *Id*.

---

[4] The Amended Complaint alleges that "[t]he Defendant['s] actions and course of conduct . . . constituted harassment within the meaning and the prohibitions of 15 USCS § 1692d; and . . . misstatements within the meaning and the prohibitions of 15 USCS § 1692e." ECF No. 10 at PageID # 42.

**2.** *Prior Related Actions*

As part of his efforts in response to the State Court foreclosure action, Gilliam filed a Chapter 11 bankruptcy petition on behalf of PRPSC—purportedly as a "trustee"—on August 19, 2019. *See In re Pac. Rim Prop. Serv. Corp.*, No. 19-01051 (Bankr. D. Haw. Aug. 19, 2019). The Bankruptcy Court for the District of Hawaii dismissed that Chapter 11 Petition on September 5, 2019 for failure to pay the filing fee and to file required documents. *See In re Pac. Rim Prop. Serv. Corp.*, 2020 WL 4371106, at *2 (B.A.P. 9th Cir. July 29, 2020) (summarizing procedural history in the Bankruptcy Court). The Bankruptcy Court then issued an order annulling the automatic stay that it had entered earlier, after finding that Gilliam lacked standing because he was not a shareholder or trustee of PRPSC. *Id.* Gilliam appealed that order to the Ninth Circuit's BAP. *Id.*

On July 29, 2020, the BAP dismissed the appeal because it agreed that Gilliam lacked standing. In so doing, the BAP confirmed the Bankruptcy Court's finding that "Gilliam is not the debtor [PRPSC], nor does he have any interest in or control over [PRPSC] or its assets, including the Condominium." *Id.* at *3. The BAP specifically found on de novo review that "Gilliam is not a shareholder, much less the sole shareholder, of [PRPSC]." *Id.* It concluded that

> Gilliam has not shown how he is 'directly and adversely
> affected pecuniarily' by the bankruptcy court's decision
> to annul the stay in Pacific Rim's bankruptcy case. . . .
> Gilliam is not the debtor, nor does he have any interest in

> or control over the debtor or its assets.  Simply put, the
> order annulling the stay has not diminished Gilliam's
> property, increased his burdens, or otherwise
> detrimentally affected his rights.

*Id.* at *4.  No further appeal was taken of the BAP's decision, and it is final.

Meanwhile, on October 25, 2019, Gilliam filed a Chapter 13

bankruptcy petition on behalf of himself, asserting—contrary to the position

Gilliam took in the then-ongoing Chapter 11 proceedings on behalf of PRPSC—

that the Property was an asset in *his* estate.  *See In re Gilliam*, No. 19-01366

(Bankr. D. Haw. filed Oct. 25, 2019).  In that Petition, Gilliam filed a motion

asserting that he owned the Property, claiming that it had been conveyed to him

from his mother's estate or from PRPSC.  *See In re Gilliam*, 2020 WL 5848340, at

*3.  In response, Robinson, the PRPSC receiver, filed a motion seeking to lift the

automatic Chapter 13 bankruptcy stay, contending that PRPSC—not Gilliam—

owned the Property and that Gilliam had no interest in PRPSC.  *See id.* at *4.

Ruling on these and other related motions, the Bankruptcy Court

considered an evidentiary record and specifically found that:

> A.  [Robinson] is the receiver of [PRPSC], and has sole
> control of PRPSC's assets, including the property located
> at 5050 Lawai Road, Apt. 209, Koloa, Hawaii (the
> "Property").
>
> B.  [Gilliam] did not have the power to cause PRPSC to
> transfer the Property to himself, and therefore the
> Property is not property of his bankruptcy estate.

*Id.* at *3 (quoting a March 13, 2020 Order of the Bankruptcy Court).  The

Bankruptcy Court concluded that "[t]he Property is not property of [Gilliam's]

bankruptcy estate" and "[t]he automatic stay pursuant to 11 U.S.C. § 362 does not

apply to the Property."  *Id.*  Gilliam filed a Motion to Reconsider with the

Bankruptcy Court, but the Bankruptcy Court denied that Motion, reasoning in part:

> Debtor's motion to reconsider renews several arguments
> made in his initial motion for turnover.  Debtor argues
> that a number of transfers gave him control over
> the Poipu property, including a quitclaim deed issued
> from his mother's probate estate in December 2018 and a
> warranty deed issued from Pacific Rim in December
> 2019.
>
> However, Debtor's mother's probate had no effect on the
> Poipu property.  After the Debtor's mother formed
> Pacific Rim, the corporation, not the Debtor's mother,
> owned the Poipu property.  The most that the Debtor
> could inherit was his mother's stock in the corporation.
> By the time the Debtor attempted to make the corporation
> transfer the Poipu property to him, the state court had
> already given the receiver exclusive control of the
> corporation's assets.  Any disagreement that the Debtor
> has with the state court's appointment of a receiver is
> properly the subject of a state court appeal, not a
> bankruptcy case.

*Id.*  Gilliam appealed those Bankruptcy Court orders to this court.  *See In re*

*Gilliam*, Civ. No. 20-00194 JMS-WRP (filed Apr. 29, 2020).

On October 1, 2020, this court issued its Order Affirming Orders of

Bankruptcy Court.  *See In re Gilliam*, 2020 WL 5848340, at *1.  Reviewing and

analyzing the same evidence that was before the Bankruptcy Court, this court

affirmed its findings, determining that the Property is not part of Gilliam's

bankruptcy estate.  *Id.* at *4-6.  This court concluded that:

> The Bankruptcy Court's factual finding—that the
> condominium was not property of Gilliam's estate—was
> not clearly erroneous, and is well-supported by ample
> evidence in the record.  A title report plainly indicates
> that PRPSC (not Gilliam) is the "fee owner" of the
> condominium.  There is no evidence that the
> condominium was ever transferred from PRPSC to the
> "new corporation" and then to Gilliam, much less that it
> was transferred from PRPSC directly to Gilliam.

*Id.* at *5 (internal citation omitted).  This court continued:

> even if Gilliam inherited the *stock* of PRPSC from his
> mother's estate, this would not mean he inherited the
> condominium.  PRPSC was dissolved in 2012 and as
> such, under Hawaii law, it "may not carry on any
> business except that appropriate to wind up and liquidate
> its business and affairs, including . . . [d]ischarging or
> making provisions for discharging its liabilities."  [Haw.
> Rev. Stat.] § 414-385(a).  PRPSC's liabilities included
> the unpaid fees and assessments of over $245,000 owed
> to the foreclosing AOAO.  Those affairs would need to
> have been settled *before* any of PRPSC's property could
> be distributed to its shareholders.  That foreclosure
> proceeding, begun in 2016, was ongoing in December
> 2018 (and still is), and thus Gilliam could not have
> obtained the condominium based on any inheritance of
> shares of PRPSC before Gilliam filed his Chapter 13
> petition.

*Id.* (internal citation and footnote omitted).

Gilliam appealed this court's decision affirming the Bankruptcy Court's orders to the Ninth Circuit, where it remains pending.  *See In re Gilliam*, No. 20-17165 (9th Cir. filed Nov. 3, 2020).

**B.    Procedural Background in this Court**

Plaintiff filed his initial Complaint on August 8, 2020.  ECF No. 1. He filed his Amended Complaint on November 7, 2020.  ECF No. 10.  Defendant filed its Answer on November 23, 2020, ECF No. 11, and its Motion to Dismiss and/or for Judgment on the Pleadings on December 31, 2020, ECF No. 17. Plaintiff filed a "Resistance to Motion to Dismiss or for Judgment on the Pleadings" ("Opposition") on March 1, 2021.  ECF No. 25.  Defendants filed a Reply to the Opposition on March 8, 2021.  ECF No. 27.  Plaintiff moved the court to file a Sur-Reply on March 16, 2021.  ECF No. 28.  Plaintiff filed a Sur-Reply on March 21, 2021.  ECF No. 30.  The court decides the matter without a hearing under Local Rule 7.1(c).

## III.  <u>STANDARDS OF REVIEW</u>

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss for "failure to state a claim upon which relief can be granted."  A Rule 12(b)(6) dismissal is proper when there is either a "'lack of a cognizable legal theory or the absence of sufficient facts alleged.'"  *UMG Recordings, Inc. v. Shelter Capital*

*Partners*, LLC, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affs.*, 521 F.3d 1061, 1065 (9th Cir. 2008).  This tenet—that the court must accept as true all of the allegations contained in the complaint—"is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  The "mere possibility of misconduct," or an "unadorned, the-defendant-unlawfully-harmed-me accusation" falls short of meeting this plausibility standard.  *Id.* at 678-79 (citations omitted); *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

Federal Rule of Civil Procedure 12(c) permits judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial."  Because the issue presented by a Rule 12(c) motion is substantially the same as

that posed in a 12(b)(6) motion—whether the factual allegations of the complaint, together with all reasonable inferences, state a plausible claim for relief—the same standard applies to both. *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) (citing *Dworkin v. Hustler Mag. Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989) (holding that Rule 12(c) and Rule 12(b)(6) motions differ in time of filing but are otherwise "functionally identical," and applying the same standard of review)).

A motion for judgment on the pleadings is properly granted when there are no disputed issues of material fact, and the moving party is entitled to judgment as a matter of law. *See Ventress v. Japan Airlines*, 603 F.3d 676, 681 (9th Cir. 2010). Judgment on the pleadings is not appropriate if the court considers matters outside of the pleadings; in such cases, the motion must be converted to a Rule 56 motion for summary judgment, and the non-moving party must be granted an opportunity to respond. *See Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989). The court may, however, "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion . . . into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

## IV. <u>DISCUSSION</u>

In its Motion, Defendant argues that (1) Gilliam lacks standing necessary for subject-matter jurisdiction because he (a) is not a "consumer" under the FDCPA and (b) does not own the Property; and (2) the Amended Complaint fails to state a claim upon which relief can be granted because he has no qualifying consumer debt under the FDCPA.[5]  The court addresses each argument to follow.

### A.   Plaintiff Lacks "Statutory Standing" to Bring an FDCPA Claim

The FDCPA was enacted "as a broad remedial statute designed to 'eliminate abusive debt collection practices by debt collectors[.]'" *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1060 (9th Cir. 2011) (quoting 15 U.S.C. § 1692(e)).  "The FDCPA comprehensively regulates the conduct of debt collectors, imposing affirmative obligations and broadly prohibiting abusive practices." *Id.* at 1060-61.  The FDCPA provides an action for damages to "any person" who suffers "actual damage" at the hands of a "debt collector":

> Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter *with respect to any person* is liable to such person in an amount equal to the sum of—
>
> (1) any actual damage sustained by such person as a result of such failure; [or]

---

[5] It also argues that, even if Gilliam could bring suit on behalf of PRPSC, the FDCPA claims fail because PRPSC, as a condominium association and not a "natural person," is not a "consumer" under the FDCPA.  But because the FDCPA claims otherwise fail, the court need not reach this question.

> (2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000[.]

15 U.S.C. § 1692k(a) (emphasis added).

Generally, "[t]o state a claim under the FDCPA, a plaintiff must allege facts that establish that (1) the plaintiff has been the object of collection activity arising from a consumer debt; (2) the defendant attempting to collect a debt qualifies as a 'debt collector' under the FDCPA; and (3) the defendant has engaged in a prohibited act or has failed to perform a requirement imposed by the FDCPA." *Amelina v. Mfrs. & Traders Tr. Co.*, 2016 WL 3982483, at *6 (S.D. Cal. July 21, 2016) (quoting *Pratap*, 63 F. Supp. 3d at 1113). *See also Calogero v. Shows, Cali & Walsh, L.L.P.*, 970 F.3d 576, 581 (5th Cir. 2020) ("To state an FDCPA claim, Plaintiffs must first allege that they have been the object of collection activity arising from 'debt.'") (citation omitted). For the reasons set forth to follow, because Plaintiff does not establish the first requirement for a valid FDCPA claim, his FDCPA claims fails.[6] Put simply, Gilliam was not the object of collection activity arising from consumer debt.

---

[6] Defendant also suggests that Gilliam's FDCPA claim is time-barred because it was filed more than four years after the State Court foreclosure action was initiated and more than one year after Gilliam sought to intervene in that action. *See* 15 U.S.C. § 1692k(d) (requiring an FDCPA action "within one year from the date on which the violation occurs."). But because Gilliam's action otherwise fails, and because it is unclear when any specific alleged violation occurred in the (still ongoing) State Court foreclosure action, the court does not reach whether Gilliam's FDCPA claims are also time-barred.

### 1.   *Whether Gilliam is a "Consumer" is Not Dispositive*

Before analyzing whether the Amended Complaint states an FDCPA claim, the court must clarify exactly what is at issue.

First, Defendant argues in part that the court lacks subject-matter jurisdiction because Plaintiff lacks standing as he does not qualify as a "consumer" under 15 U.S.C. § 1692a(3) ("The term 'consumer' means any natural person obligated or allegedly obligated to pay any debt."). *See* ECF Nos. 17 at PageID # 85 and 17-1 at PageID ## 102-03. But what Defendant is really arguing is that Gilliam lacks "statutory standing." *See, e.g.*, *Peters v. Roberts Markel, PC*, 2012 WL 2190563, at *6 (D. Haw. June 13, 2012) ("A statute may place additional restrictions on who can sue, creating 'statutory standing' requirements that are separate from the standing requirements relating to a court's subject-matter jurisdiction.") (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 90-92 (1998). "The Ninth Circuit has noted that, when a court determines whether a plaintiff is an aggrieved person under a statute, that determination 'is a merits determination, not a threshold jurisdictional standing question.'" *Id.* (quoting *Jewel v. Nat'l Sec. Agency*, 673 F.3d 902, 907 n.4 (9th Cir. 2011) (brackets omitted)); *see also Nw. Requirements Utils. v. F.E.R.C.*, 798 F.3d 796, 807 n.9 (9th Cir. 2015) ("Unlike Article III standing . . . "statutory standing" does not implicate our subject-matter jurisdiction." (citation omitted)). "For purposes of subject

15

matter jurisdiction, whether the claims are valid or not is irrelevant. . . . Instead, [defendant is] arguing that [plaintiff] does not meet the statutory requirements for asserting an FDCPA claim." *Peters*, 2012 WL 2190563, at *6.

Second—when arguing that Plaintiff lacks standing to allege violations of the FDCPA under §§ 1692d and 1692e because he "does not qualify as a 'consumer' under the FDCPA," ECF No. 17-1 at PageID # 103—Defendant implies that only "consumers" may bring an FDCPA action. And, indeed, some cases indicate that a plaintiff must be a "consumer" to state a valid FDCPA claim. *See, e.g.*, *Chavez v. Deutsche Bank Nat'l Tr. Co.*, 2020 WL 7038589, at *17 (D. Haw. Nov. 30, 2020) (citation omitted). But this condition is true only for *certain* FDCPA claims. *See*, *e.g.*, 15 U.S.C. §§ 1692c (referring to communications "with a consumer") & 1692g (same). Not all FDCPA claims—including those brought under §§ 1692d and 1692e, which are at issue here—have the same "consumer" requirement. *See*, *e.g.*, 15 U.S.C. § 1692d ("A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse *any person* in connection with the collection of a debt") (emphasis added); 15 U.S.C. § 1692e (prohibiting debt collectors from using "false, deceptive, or misleading representation or means in connection with the collection of any debt").

"On its face, § 1692d is not a protection for consumers alone; it ostensibly protects *any person* from being harassed, oppressed, or abused by a debt

collector in connection with the collection of a debt. . . . The same holds true for § 1692e.'" *Miljkovic v. Shafritz and Dinkin, P.A.*, 791 F.3d 1291, 1300-01 (11th Cir. 2015); *see also, e.g.*, *Amelina*, 2016 WL 3982483, at *8 ("Persons subjected to abusive debt collection by a debt collector who was attempting to collect a debt from another person may bring an action against the debt collector under sections of the FDCPA not specifically limited to consumers.") (citing cases).

"However, in order for a non-consumer to have standing under the FDCPA, the alleged debt collection activities must have been directed at the plaintiff." *Amelina*, 2016 WL 3982483, at *8 (citations omitted); *see also Peters*, 2012 WL 2190563, at *10 ("No matter what, relief under the FDCPA is available only to a person who sustains damage through a debt collector's violation of the FDCPA 'with respect to' that very person.  When a debt collector violates the FDCPA with respect to someone else, the FDCPA does not provide for claims by others.") (citing 15 U.S.C. § 1692k(a)); *Zuniga v. Jacobs*, 2020 WL 168106, at *14 (S.D. Fla. Jan. 13, 2020) ("Zuniga has no standing to maintain this [FDCPA] claim because the underlying collection activity, the state court lawsuit, is not directed towards him but solely at Castillo.").

The question here, therefore, is not whether Gilliam was a "consumer" under the FDCPA.  Rather, it is whether he was the "object of debt collection

activities," i.e., whether activities were directed at him (as opposed to PRPSC or the Property itself). *Amelina*, 2016 WL 3982483, at *6.

2. ***Plaintiff Was Not the Object of the Foreclosure Action Because He Has No Ownership Interest in the Property***

To determine whether Gilliam was "the object of collection activity arising from a consumer debt," the court focuses on whether the State Court foreclosure action was directed at him. In that action, the AOAO (through PMKC) sought to enforce its lien against the title holder of the Property. It named and directed its actions against PRPSC—not against Gilliam. Put differently, it directed its efforts at the *owner* of the debt. *See* 15 U.S.C. § 1692a(5) (defining "debt" as "*any obligation or alleged obligation of a consumer* to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."). The question thus turns on whether Gilliam has an ownership interest in the Property, PRPSC, or the debt obligation that was the subject of the lien being foreclosed upon.

But this very issue—whether Gilliam owns the Property or has an ownership interest in PRPSC—has already been determined two times by the Bankruptcy Court, and each of those factual findings were affirmed through at least one level of appeal. *See In re Pac. Rim Prop. Serv. Corp.*, 2020 WL

18

4371106, at *3 ("Gilliam is not the debtor [PRPSC], nor does he have any interest in or control over [PRPSC] or its assets, including the Condominium.") (BAP opinion affirming Bankruptcy Court order); *In re Gilliam*, 2020 WL 5848340, at *5 ("The Bankruptcy Court's factual finding—that the condominium was not property of Gilliam's [bankruptcy] estate—was not clearly erroneous, and is well-supported by ample evidence in the record.") (decision of this court, affirming Bankruptcy Court orders).

And so, the *ultimate* question is whether to give preclusive effect to those prior orders under federal res judicata principles.  *See McClain v. Apodaca*, 793 F.2d 1031, 1033 (9th Cir. 1986) ("The preclusive effect of the prior decision of the bankruptcy court is determined under federal res judicata standards.") (citations omitted); *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008) ("The preclusive effect of a federal-court judgment is determined by federal common law.") (citation omitted).[7]

///

///

///

---

[7] In contrast, "[f]or judgments in diversity cases, federal law incorporates the rules of preclusion applied by the State in which the rendering court sits."  *Taylor*, 553 U.S. at 891 n.4 (citing *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001)); *see also Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984) ("It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.").

a.       *Federal Res Judicata Principles*

The terms "claim preclusion" and "issue preclusion"[8] are collectively referred to as "res judicata."  *Taylor*, 553 U.S. at 892.  The court need only consider whether issue preclusion applies.  *See Semtek*, 531 U.S. at 502 (explaining that claim preclusion bars courts from deciding claims that have already been adjudicated on the merits in a prior suit).  "Issue preclusion . . . bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim."  *Id.* (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748-49 (2001)).

For issue preclusion to apply, "(1) the issue must be identical to one alleged in prior litigation; (2) the issue must have been 'actually litigated' in the prior litigation; and (3) the determination of the issue in the prior litigation must have been 'critical and necessary' to the judgment."  *Beauchamp v. Anaheim Union High Sch. Dist.*, 816 F.3d 1216, 1225 (9th Cir. 2016) (quoting *Clark v. Bear Stearns & Co., Inc.*, 966 F.2d 1318, 1320 (9th Cir. 1992)).  "[A] final judgment retains its collateral estoppel effect, if any, while pending appeal."  *Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 882 (9th Cir. 2007) (citing *Tripati v. Henman*, 857

---

[8] "[I]ssue preclusion encompasses the doctrines once known as 'collateral estoppel' and 'direct estoppel.'"  *Taylor*, 553 U.S. at 892 n.5.

F.2d 1366, 1367 (9th Cir. 1988) (stating that a pending appeal does not affect a judgment's finality for preclusion purposes)); *see also Hawkins v. Risley*, 984 F.2d 321, 324 (9th Cir. 1993) ("[I]n federal courts . . . the preclusive effects of a lower court judgment cannot be suspended simply by taking an appeal that remains undecided.") (quoting *Robi v. Five Platters, Inc.*, 838 F.2d 318, 327 (9th Cir. 1988)).

       *b.     Application of Federal Res Judicata Principles*

Applying issue preclusion principles, the court easily concludes that it must give preclusive effect to the Bankruptcy Court's prior findings that Gilliam has no ownership interest in the Property or in PRPSC.

First, the issues of ownership are identical. The same Property at issue here was examined in both Bankruptcy Court proceedings. And the questions were identical: whether Gilliam owned the property as part of his bankruptcy estate or had an interest in PRPSC at the time of the State Court foreclosure action when bankruptcy proceedings were instituted.

Second, the ownership questions were "actually litigated" in both prior proceedings. For these purposes, "an issue is actually litigated when an issue is raised, contested, and submitted for determination" in a prior proceeding. *Janjua v. Neufeld*, 933 F.3d 1061, 1066 (9th Cir. 2019) (citations omitted). In the Chapter 13 proceeding, Gilliam claimed that the Property was part of his

bankruptcy estate; indeed he filed a "Turnover Motion" specifically "seeking a ruling from the Bankruptcy Court that he owned the [Property] and that it should be turned over to him." *In re Gilliam*, 2020 WL 5848340, at *3.  In response, the receiver for PRPSC filed a motion seeking to lift the automatic bankruptcy stay, asserting that "contrary to the Turnover Motion's assertion, PRPSC (not Gilliam) owns the [Property] and therefore it is not part of Gilliam's bankruptcy estate[.]" *Id.*  And this court affirmed those findings after reviewing the same evidence in the record.  *Id.* at *6.[9]

Moreover, the question was also "actually litigated" separately in the Chapter 11 proceeding that Gilliam improperly brought on behalf of PRPSC.  In annulling the automatic stay for that proceeding, the Bankruptcy Court found that Gilliam lacked standing because he was not a shareholder or trustee of PRPSC. *See In re Pac. Rim Prop. Serv. Corp.*, 2020 WL 4371106, at *2.  And the BAP agreed upon de novo review of the same evidence.  *Id.* at *3-4.  That is, the BAP reviewed and analyzed the evidence regarding Gilliam's mother's estate, PRPSC's acquisition of the Property, PRPSC's dissolution, Gilliam's creation of a "New Corporation" and his purported attempt to convey the Property to it.  *Id.* at *1.  No further appeal was taken of that BAP decision.  In short, the ownership question

---

[9] It makes no difference, for collateral estoppel purposes, the Gilliam has filed a further appeal to the Ninth Circuit.  *See, e.g.*, *Collins*, 505 F.3d at 882.

was certainly "raised, contested, and submitted for determination," *Janjua*, 933

F.3d at 1066, in both the Chapter 11 and 13 proceedings.[10]

And finally, the ownership questions were "'critical and necessary' to

the judgment" in both the Chapter 11 and Chapter 13 actions. *Beauchamp*, 816

F.3d at 1225.  Whether Gilliam owned the Property (or, concomitantly, whether he

had any interest in PRPSC) was necessary—indeed it was determinative—to

decide whether Gilliam or PRPSC was entitled to a bankruptcy stay in either of

those proceedings. *See* 11 U.S.C. § 362(a)(2) (providing, among other matters, a

bankruptcy stay of enforcement as to "the debtor or against property of the

estate").  It was also critical and necessary to determine whether Gilliam had

standing to represent PRPSC in the Chapter 11 proceeding. *See In re Pac. Rim*

*Prop. Serv. Corp.*, 2020 WL 4371106, at *3.

Thus, res judicata precludes Gilliam from attempting to establish in

this action that had an ownership interest in the Property.  He did not.  The lien

being enforced was not based on Gilliam's debt.  It follows that Defendant,

---

[10] Gilliam appears to argue that the Bankruptcy Court findings should not be given preclusive effect because they were issued in non-core proceedings.  ECF No. 30 at PageID # 251.  This argument fails.  First, proceedings to determine an automatic stay are core bankruptcy matters. *See* 28 U.S.C. § 157(b)(2)(G); *In re Mosher*, 578 B.R. 765, 770 (Bankr. S.D. Tex. 2017) ("[A] request to lift the automatic stay . . . is expressly defined as a 'core proceeding.'").  Second, the Ninth Circuit has rejected any distinction between core and non-core proceedings in considering whether to give res judicata effect to bankruptcy court orders. *See In re Int'l Nutronics, Inc.*, 28 F.3d 965, 969-70 (9th Cir. 1994).

tilted

through its representation of the AOAO in the State Court foreclosure action

(directed at PRPSC and the Property), did not direct its efforts at Gilliam.

       c.    *Other Allegations*

What's more, there are no other plausible allegations in the Amended

Complaint that would constitute consumer-debt collection efforts by Defendant

directed specifically at Gilliam.  Although the Amended Complaint refers to "the

mandate to eject the plaintiff [from the Property]," ECF No. 10 at PageID # 33,

any such proceedings were directed or filed by the receiver for PRPSC (not by the

AOAO or Defendant).[11]  *See id.* ("The appointment of the so-called receiver . . .

caused the plaintiff to suffer loss of the peaceful and quiet use of the subject

property as a home; and (with the evolution of the short-term rental market with

the likes of Airbnb), as a valuable economic periodic vacation rental[.]").  And the

Amended Complaint does not allege any other conduct by Defendant beyond

judicial foreclosure activities, even if it alleges that those foreclosure activities

were wrongful.[12]

---

[11] A court-appointed receiver acts under Hawaii law as "an officer of the court," *Haw. Ventures, LLC v. Otaka, Inc.*, 114 Haw. 438, 486, 164 P.3d 696, 744 (2007) (citation omitted), and not as an agent of the AOAO.  The receiver had his own counsel, *see In re Gilliam*, 2020 WL 5848340 (listing Alika L. Piper and Simon Klevansky as counsel for receiver Robinson), and nothing indicates he acted on behalf of Defendant.

[12] Actions that constitute enforcement of a security interest (such as a judicial foreclosure action), without more, do not constitute an attempt to collect a debt for purposes of the FDCPA. *See Barnes v. Routh Crabtree Olsen PC*, 963 F.3d 993, 998 (9th Cir. 2020) ("In contrast to an action on the note, the enforcement of a security interest does not entail an attempt to collect

(continued . . .)

For the foregoing reasons, the FDCPA claims in the Amended

Complaint are DISMISSED.[13]

Normally, "[u]nless it is absolutely clear that no amendment can cure

the defect . . . a pro se litigant is entitled to notice of the complaint's deficiencies

and an opportunity to amend prior to dismissal of the action." *Lucas v. Dep't of*

*Corr.*, 66 F.3d 245, 248 (9th Cir. 1995); *see also Lopez v. Smith*, 203 F.3d 1122,

1126 (9th Cir. 2000). Here, the court seriously doubts whether an amendment to

an FDCPA claim could cure the defects identified in this Order. Nevertheless,

given Plaintiff's pro se status, the court will give Plaintiff leave to file a

---

money from the debtor."); *id.* at 1001 ("A judicial foreclosure proceeding is not a form of debt collection when the proceeding does not include a request for a deficiency judgment or some other effort to recover the remaining debt."). Defendant's Motion, however, does not raise *Barnes* as a ground for dismissal, and the court has not analyzed whether the Amended Complaint alleges enough to withstand a such a challenge.

[13] Defendant also argues that the FDCPA claims fail because the debt was not "primarily for personal, family, or household purposes." *See* 15 U.S.C. § 1692a(5) (defining "debt" as an "obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are *primarily for personal, family, or household purposes*[.]") (emphasis added). Defendant points out that the Amended Complaint appears to allege (at times) that the Property was being used as a vacation rental to generate income, and refers to interference with Plaintiff's business relationship with prospective renters, ECF No. 10 at PageID #33-34, 40-41—contrary to the Property's use for "personal, family, or household purposes." And, indeed, courts have indicated that a loan on rental property is not a "consumer debt" covered by the FDCPA. *See, e.g.*, *Kitamura v. AOAO of Lihue Townhouse*, 2013 WL 1398058, at *5 (D. Haw. Mar. 29, 2013). The Amended Complaint, however, does not clearly indicate—one way or the other—the nature of the "debt," as it also alleges that "Plaintiff and [P]laintiff's late Mother used and occupied the [Property] for over twenty-five years," ECF No. 10 at PageID # 30. *Cf. Heejoon Chung v. U.S. Bank, N.A.*, 250 F. Supp. 3d 658, 681 (D. Haw. 2017) ("The relevant time period for determining the nature of the loan under the FDCPA is when the loan first arises, not when collection efforts begin.") (citation omitted). And so, at this point, where the Amended Complaint otherwise fails, the court need not base its dismissal on the lack of a "consumer debt."

supplemental memorandum, consisting of no more than five pages, describing any

further amended FDCPA claims that he believes he could bring that would not be

barred by this Order.  That supplemental memorandum must be filed by **May 11,**

**2021**.  Thereafter, the court will review the memorandum to determine whether to

allow a Second Amended Complaint.  Failure to file a supplemental memorandum

by May 11, 2021 will result in dismissal of the FDCPA claims.

**B.      Plaintiff's Remaining State Claims**

Having dismissed the federal claims, the only remaining claims are

state law claims over which the court has only supplemental jurisdiction (there is

no basis in the Amended Complaint for diversity jurisdiction).  *See* 28 U.S.C.

§ 1367(c)(3).  And under § 1367(c)(3), "district courts may decline to exercise

supplemental jurisdiction . . . if . . . the district court has dismissed all claims over

which it has original jurisdiction[.]"  *See City of Chicago v. Int'l Coll. of Surgeons*,

522 U.S. 156, 173 (1997) ("[W]hen deciding whether to exercise supplemental

jurisdiction, 'a federal court should consider and weigh in each case, and at every

stage of the litigation, the values of judicial economy, convenience, fairness, and

comity.'" (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988))).

"[I]n the usual case in which all federal-law claims are eliminated before trial, the

balance of factors . . . will point towards declining to exercise jurisdiction over the

26

remaining state-law claims." *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc) (citation omitted).

      Accordingly, because the dismissed FDCPA claims provide the only basis for federal jurisdiction, the court does not address the state law claims.  If Plaintiff does not file a supplemental memorandum, the court will decline supplemental jurisdiction over the state law claims pursuant to § 1367(c) and will DISMISS them without prejudice to refiling in state court.[14]  If Plaintiff files a supplemental memorandum and if the court allows him to file a Second Amended Complaint, however, the court will retain jurisdiction over related state law claims and address them again if challenged at that time.

## V.  **CONCLUSION**

      For the foregoing reasons, Defendant's Motion to Dismiss and/or Motion for Judgment on the Pleadings, ECF No. 17, is GRANTED.  Plaintiff's claims under the FDCPA are DISMISSED.  Plaintiff, however, is granted leave to file a supplemental memorandum (not exceeding five pages) to explain how he could file a Second Amended Complaint that would state an FDCPA claim against

---

[14] The statute of limitations on state law claims would be tolled for the period that this federal case was pending.  *See* 28 U.S.C. § 1367(d) ("The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period."); *Artis v. Dist. of Columbia*, 138 S. Ct. 594, 598 (2018 (holding that "§ 1367(d)'s instruction to 'toll' a state limitations period means to hold it in abeyance, i.e., to stop the clock").

Defendant.  A supplemental memorandum is due by **May 11, 2021**.  If he files a supplemental memorandum by that date, the court will determine whether to allow a Second Amended Complaint.  If not, the court will decline to exercise supplemental jurisdiction over his remaining state claims by dismissing them without prejudice to re-filing in a state court action, and will close the case file.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, April 27, 2021.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Gilliam v. Porter McGuire Kiakona & Chow LLP*, Civ. No. 20-00372 JMS-KJM
Order Granting Defendant's Motion to Dismiss and/or for Judgment on the Pleadings, ECF No. 17